IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No.: 13CR334 MV |
| | ) | |
| CRYSTAL TORRES, | ) | |
| | ) | |
| Defendant. | ) | |

## REPLY TO THE UNITED STATES RESPONSE AND SECOND ADDENDUM

COMES NOW, the defendant, Crystal Torres, by and through her attorney, John V. Butcher, Assistant Federal Public Defender, and replies to the government's Response to her Sentencing Memorandum and to the Second Addendum to the Presentence Report.

In support of her original Sentencing Memorandum and reply, Ms. Torres states as follows:

1. Both the Response and the Second Addendum argue in favor of enhancement pursuant to §3A1.2(c) arguing that the assault to the law enforcement officer was done in a matter creating "a substantial risk of serious bodily injury or death." This is an objective, not a subjective standard. The actions of Ms. Torres never created a "substantial" risk of "serious bodily injury," much less death.

2. While Ms. Torres disagrees with some of the factual allegations contained in the Response and the Second Addendum, it is not in dispute that Ms. Torres'

actions were an attempted suicide.[1] While Ms. Torres does not remember any verbal threats towards the police officers, assuming *arguendo* that she made a statement along the lines of "if this isn't going to do it, I will just f'''ing kill you," that statement is not a present sense impression to harm the officers but extremely consistent with her intent to have the officers to shoot and kill her. What Ms. Torres remembers saying is, something along the lines of "it's too late Bryce, no one can help me now."[2] Thus, there is nothing in Ms. Torres' statements or actions that is inconsistent with attempted suicide.

3. Threatening the officers with a knife or even having intention "to do bodily harm" is not sufficient to apply 3A1.2(c). Ms. Torres has to create a **substantial** risk of **serious** bodily injury. That simply did not occur. Moreover, it is the burden of the government to prove the substantial risk by a preponderance of the evidence.

4. Ms. Torres never injured the officers, nor was she in a position to do so. Any provocation, verbal or otherwise on her part, was simply to get the officers to shoot her. In fact, she allowed both officers to draw their firearms and train them upon her. Even when they tried to calm the situation down, Ms. Torres was trying to get them to shoot her. Unfortunately, she was successful.

5. In in the final analysis, it is clear that Ms. Torres did not create a substantial risk of serious bodily injury to the officers. Her actions were solely calculated

---

[1] As usual, there is some disagreements between the various witness statements.
[2] Bryce Gabaldon and Ms. Torres are members of the same pueblo and have known each other since elementary school.

to get the officers to shoot her. It would have been impossible, given the situation she created, for her to get "the drop" on the officers or to get anywhere near them to hurt them, much less, to create a substantial risk of serious bodily injury or death.[3]

6. Ms. Torres believes that when she was shot, she dropped the pocket knife. What she remembers is seeing a white light and believing that she was dying. She remembers reaching towards the light. This is consistent with physics and anatomy. Ms. Torres was shot in the chest with two .357 Magnum bullets. While the exact bullets were not listed, they appear to be Hornady ammunition hollow points. Depending on the weight of the bullet, they have a muzzle energy between 548 to 624 ft-lb and a muzzle velocity between 1250 to 1500 ft/sec. *See* [www.ballistics101.com/357_magnum.php](www.ballistics101.com/357_magnum.php). Being struck with two .357 Magnum bullets in the chest would do a significant amount of damage and would certainly disorient the individual shot and put her into shock. It would be certainly consistent with Ms. Torres' statements that she was knocked to the ground with a significant force. The idea that at that point she could continue to threaten or be a threat to the officers is ludicrous. She certainly did not represent a substantial risk.

---

[3] At times, the officers claimed all 350 plus pounds of Ms. Torres "sprinted" towards them. This was physically impossible. The idea that Ms. Torres intended to rush the officers with firearms aimed at her chest and then "Matrix" style dodging the bullets to attack them with a 3 inch pocket knife is unsupported by the evidence. What is supported is that Ms. Torres wanted to be shot in a suicide attempt.

7. It should be noted that since the introduction of the Model Penal Code, there has been a change in the law by the courts and the legislatures concerning suicide. While suicide used to be a criminal act, often a felony, it now treated as mental illness. Thus, the focus of the criminal statutes have been on those who aid one in committing suicide. *See* §30-2-4 (1963) N.M.Stat.Ann. (criminalizing deliberate assistance in someone else's suicide but not the one who attempted suicide.) While Ms. Torres is certainly not suggesting that the officers be charged, she is suggesting that her actions should be treated for what it is, a suicide attempt. Thus, her statement and actions never created a substantial risk of serious bodily risk to the officers.

8. Ms. Torres' actions did not create a "substantial risk of serious bodily injury or death" even if her actions of suicide could be considered "fleeing from a law enforcement officer", and, thus, §3C1.2 should not be applied. Both the Addendum and the Response make the highly unsupported assertion that the simple act of applying the brakes and, perhaps, swerving at 45 miles per hour, resulted in a substantial risk of serious bodily injury or death to the motorists. Even assuming it was "sheer luck" that Ms. Torres was not hit by a vehicle, it does not mean that those occupants in the vehicle had a substantial risk of death or serious bodily injury. There was no showing that the traffic was ever that close to hitting each other or suffering serious bodily injury or death. It is much more likely the avoidance of an accident was just routine driving. Certainly, factually, it did not lead to any injury or property damage.

9. It is the burden of the government to show by the preponderance of evidence that Ms. Torres' actions created a substantial risk of death or serious bodily injury both to the officers and to other persons. It is not Ms. Torres' burden to disprove it. The facts are clear in this case. No one, other than Ms. Torres, was injured. The officers' physical safety was never in jeopardy. In fact, Ms. Torres acted in a way to maximum the chance that she would be shot by the officers. There was absolutely no chance that she would ever have gotten close enough to injure them with a knife, nor was that her intent.

10. The risk Ms. Torres allegedly created to the motorists, was that less of a dog or coyote running onto the highway. Unlike a dog or coyote, Ms. Torres was a lot more visible and moved a lot more slowly. Moreover, we have the undisputed fact that the traffic was easily able to avoid her and not hit each other. Thus, other than unsupported, conclusionary assertions, there is no evidence to support the two enhancements. Certainly, the government has not met its burden beyond a preponderance of evidence.

11. Ms. Torres objects to the allegations of Tina Baker, aka, Jane Doe.[4] Pursuant to §1B1.3 and §3D1.2, the allegations concerning her are not part of the relevant conduct of the instant offense of conviction. Moreover, Ms. Torres denies that she assaulted or threatened Ms. Baker. Ms. Torres also denies that she ever picked up a hammer and would note that it was Ms. Baker who had possession

---

[4] Since Ms. Baker is well over the age of 18, the protections of 18 U.S.C. §3509 do not apply.

of the hammer, not Ms. Torres, and it would be Ms. Baker's fingerprints on the hammer, not Ms. Torres' fingerprints. Ms. Torres never tried to stop Ms. Baker from leaving the apartment. However, Ms. Torres acknowledges that she was wrong to be in violation with the no contact order concerning Ms. Baker. Additionally, Ms. Torres also acknowledges a need to continue her treatment, including her anger management therapy, as well as, her other treatments to deal with her other mental health issues.

12. As to Ms. Torres' arguments for a downward departure and variance, Ms. Torres would rely on her position in her original Sentencing Memorandum. Ms. Torres would request a sentence that would not require placement in Bureau of Prisons custody. Specifically, Ms. Torres would specifically request that she be allowed to continue with her medical and mental health treatments.

WHEREFORE, based on the foregoing and on Ms. Torres' original sentencing Sentencing Memorandum, Ms. Torres would request a sentence of probation or a time served sentence and supervised release.

I HEREBY CERTIFY THAT on the 11th day of March 2015, I filed the foregoing electronically through the CM/ECF system, which caused AUSA Elaine Ramirez to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.
AND I FURTHER CERTIFY THAT on such date I served the foregoing by hand deliver/fax on the following non-CM/ECF Participants

    Sandra Day, USPO

 /s_____

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489

  /s  [Electronically filed]
JOHN V. BUTCHER, AFPD
Assistant Federal Public Defend